UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                     :
UNITED STATES OF AMERICA,            :
                                     :       18cr81(DLC)
                                     :
             -v-                     :    OPINION & ORDER
                                     :
LAVELLEOUS PURCELL,                  :
                                     :
                     Defendant.      :
                                     :
----------------------------------- X

APPEARANCES

For the United States:
Sheb Swett
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007

For the Defendant:
Christopher A. Flood
Akash M. Toprani
Jullian D. Harris
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007


DENISE COTE, District Judge:

     Defendant Lavelleous Purcell ("Purcell") has moved to

suppress evidence obtained from his Facebook account pursuant to

three warrants ("the Facebook Warrants") issued by the New York

County Supreme Court, and for a bill of particulars.  For the

following reasons, Purcell's motion is denied.

On August 5, 2016, the New York County Supreme Court issued the first of three warrants ("the August 2016 Warrant") ordering Facebook, Inc. to search the contents of an account belonging to Purcell, registered under the name "Mike Hill" ("the Hill Account") and to disclose twenty-four categories of electronically stored information ("ESI") associated with the Hill Account.  The twenty-four categories included such items as subscriber information, public and private messages, stored credit card numbers, photos, and videos.  The Warrant was based on the sworn affidavit of Ariela DaSilva ("DaSilva"), a Senior Investigator with the New York District Attorney's Office ("DANY") Investigation Bureau, Human Trafficking Response Unit. In her affidavit, Investigator DaSilva stated that based on her experience and training and her review of the Hill Account's public posts, several of which were attached as exhibits, there was probable cause to believe that the Hill Account was being used to commit the crimes of Promoting Prostitution in the Third Degree and Prostitution in violation of N.Y.P.L. § 230.25 and N.Y.P.L. § 230.00.  While the August 2016 Warrant noted that "[p]roof by affidavit" had been made that the enumerated ESI "constitutes evidence and tends to demonstrate that an offense was committed," the warrant did not cite any specific offenses,

nor did it attach or incorporate DaSilva's affidavit by
reference.

Despite the lack of temporal limitations on all but one of
the twenty-four categories of ESI in the August 2016 Warrant,
Facebook provided only 180 days of records for the Hill Account.
On November 1, 2016, DANY sought and obtained a second search
warrant for the Hill Account ("the November 2016 Warrant"),
which attached and incorporated the August 2016 Warrant
application and identified additional public posts from the Hill
Account to support probable cause.  The November 2016 Warrant
again requested the same twenty-four categories of ESI and did
not contain any temporal limits.  The November 2016 Warrant
specifically cited the offenses of Promoting Prostitution in the
Third Degree and Prostitution in violation of N.Y.P.L. § 230.25
and N.Y.P.L. § 230.00.

On September 26, 2017, DANY sought and obtained a third
warrant for the Hill Account ("the September 2017 Warrant").  As
was true for the August 2016 Warrant, the September 2017 Warrant
did not cite specific offenses.  Investigator DaSilva again
submitted a detailed affidavit in support of the warrant
application, which incorporated her August 2016 affidavit.  Both
affidavits explained that the ESI was sought as evidence in an
investigation of the crimes of prostitution and promoting

prostitution in violation of N.Y.P.L. §§ 230.00 and 230.25.
DaSilva's September 2017 affidavit also stated that she was able
to confirm, based on her review of the materials produced
pursuant to the August 2016 Warrant, that the Hill Account was
used to send private messages to individuals to recruit them to
work for him as prostitutes.

In July 2017, DANY brought the case to the U.S. Attorney's
Office for the Southern District of New York for joint
investigation.  On January 31, 2018, a United States Grand Jury
returned a five count indictment charging Purcell with various
federal crimes related to prostitution and the promotion of
prostitution.  Purcell was arrested on February 8, 2018.  Trial
is scheduled to begin on October 15.

On August 7, Purcell moved for a bill of particulars and to
suppress the Facebook Warrants.  He contends all three warrants
are defective for failure to particularize the objects that may
be lawfully searched and because they were executed beyond the
territorial reach of the New York state court.

In its opposition, the Government concedes that the August
2016 and September 2017 Warrants are facially deficient for

their failure to recite the specific crimes under investigation. It has disclaimed any reliance on the August 2016 Warrant.[1]

At issue is the particularity of the November 2016 and September 2017 Warrants and whether the good faith exception to the exclusionary rule should be applied to evidence obtained pursuant to the facially deficient September 2017 Warrant. After these issues are addressed, the Opinion will consider the challenge to the territorial reach of the New York state courts in issuing these warrants. Finally, the request for a bill of particulars will be discussed.

## DISCUSSION

The Fourth Amendment commands that search warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement is meant to protect against the issuance of a "general warrant" -- one that "gives the search party virtually unfettered discretion to seize anything they see." United States v. Mankani, 738 F.2d 538, 546 (2d Cir. 1984). A validly issued warrant may not authorize a "general, exploratory rummaging in a person's belongings." Andresen v.

---

[1] The Government explains that it is not relying on the August 2016 Warrant because Facebook never produced complete returns on it.

Maryland, 427 U.S. 463, 480 (1976). "In order to prevent a wide-ranging exploratory search, the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) (citation omitted). The Second Circuit has recently summarized the particularity requirement:

> To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes.

United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017) (citation omitted). The second requirement is not at issue in this case. The defendant does not suggest that the Facebook Warrants failed to describe the place to be searched.

The Court of Appeals has, in a number of recent cases involving searches of hard drives, urged "sensitiv[ity] to the difficulties associated with preserving a criminal defendant's privacy while searching through his electronic data." Ulbricht, 858 F.3d at 103; see also, United States v. Ganias, 824 F.3d 199 (2d Cir. 2016) (en banc); United States v. Galpin, 720 F.3d 436 (2d Cir. 2013) (citation omitted).

> [B]ecause there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled

6

with millions of innocuous files, by necessity,
government efforts to locate particular files will
require examining a great many other files to exclude
the possibility that the sought-after data are
concealed there.

Galpin, 720 F.3d at 436.  As technology and its uses continue to

evolve, "in assessing the reasonableness, for Fourth Amendment

purposes, of the search and seizure of digital evidence, we must

be attuned to the technological features unique to digital media

as a whole and to those relevant in a particular case . . . ."

Ganias, 824 F.3d at 213.  In upholding the particularity of a

warrant for a search of digital data, the Court of Appeals has

observed that "[t]he Fourth Amendment does not require a perfect

description of the data to be searched and seized."  Ulbricht,

858 F.3d at 100.

[C]ourts may tolerate some ambiguity in the warrant so
long as law enforcement agents have done the best that
could reasonably be expected under the circumstances,
have acquired all the descriptive facts which a
reasonable investigation could be expected to cover,
and have insured that all those facts were included in
the warrant.

Galpin, 720 F.3d at 446 (citation omitted).

Particularity is not to be confused with breadth -- they

are "related but distinct concepts."  Ulbricht, 858 F.3d at 102.

"A warrant may be broad, in that it authorizes the government to

search an identified location or object for a wide range of

potentially relevant material, without violating the

particularity requirement."  Id.  The acceptable breadth of a

warrant is directly proportional to the breadth of probable

cause.  A warrant's "description of the objects to be seized is

defective if it is broader than can be justified by the probable

cause upon which the warrant is based."  <u>Galpin</u>, 720 F.3d at

446.

The Supreme Court has held that the exclusion of evidence

is inappropriate when the Government acts in "objectively

reasonable reliance" on a search warrant, even if that warrant

is later deemed invalid.  <u>United States v. Leon</u>, 468 U.S. 897,

922 (1984); <u>see also</u> <u>Ganias</u>, 824 F.3d at 221.  There are four

circumstances in which the good faith exception to the

exclusionary rule does not apply:

> "(1) where the issuing magistrate has been knowingly
> misled; (2) where the issuing magistrate wholly
> abandoned his or her judicial role; (3) where the
> application is so lacking in indicia of probable cause
> as to render reliance upon it unreasonable; and (4)
> where the warrant is so facially deficient that
> reliance upon it is unreasonable."

<u>Galpin</u>, 720 F.3d at 452 (citation omitted).

The good faith analysis is an objective analysis of whether

"a reasonably well trained officer would have known that the

search was illegal in light of all the circumstances."  <u>United</u>

<u>States v. Rosa</u>, 626 F.3d 56, 64 (2d Cir. 2010) (citation

omitted).  "Searches pursuant to a warrant will," however,

"rarely require any deep inquiry into reasonableness."  <u>United</u>

States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (citation omitted).  "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  Id. (citation omitted).

## I.    The November 2016 Warrant

Purcell contends that the November 2016 Warrant is insufficiently particular because it lacks temporal limitations and it does not relate the information sought to the specific offenses it cites.  Unlike the concededly deficient August 2016 and September 2017 Warrants, the November 2016 Warrant cites specific statutes and specific offenses on the face of the warrant itself (Promoting Prostitution in the Third Degree, N.Y.P.L. § 230.25, and Prostitution, N.Y.P.L. § 230.00).[2]  It also describes the place to be searched (Purcell's Facebook account).  Purcell argues, however, that the November 2016 Warrant does not adequately "specify the items to be seized by their relation to designated crimes."  Ulbricht, 858 F.3d at 99.

In Ulbricht, the Second Circuit upheld the validity of a warrant that authorized the Government to search the defendant's

---

[2] The August 2016 and September 2017 Warrant affidavits and applications did include references to particular offenses, with statutory citations.  Ordinarily, a reference to supporting documents may not cure a warrant's lack of particularity unless they are explicitly incorporated into the warrant.  See Rosa, 626 F.3d at 64.

Google and Facebook accounts for "evidence, fruits, and
instrumentalities" of the specified offense.  Id. at 104.  Here,
the November 2016 Warrant describes twenty-four categories of
ESI and then states that "there is reasonable cause to believe
that the above-described property constitutes evidence and tends
to demonstrate that an offense was committed, including, but not
limited to" the two listed offenses and attempt or conspiracy to
commit those offenses.  The warrant also states that the Hill
Account "has been used or was possessed for the purpose of being
used, to commit or conceal the commission of an offense."  A
reasonable law enforcement officer investigating the crimes of
promoting prostitution and prostitution would be familiar with
the ways in which social media sites like Facebook are used in
relation to the enumerated offenses, and would be able to
ascertain with a sufficient degree of precision what data the
November 2016 Warrant authorized her to search and seize.

Purcell also challenges the November 2016 Warrant as
overbroad because it lacks temporal or subject matter
limitations.  As discussed above, however, particularity and
breadth are not the same thing.  Given the information contained
in the DaSilva Affidavits, including the public Facebook posts
that it cites, the lack of limitations was appropriate.  A
warrant's "description of the objects to be seized is defective
if it is broader than can be justified by the probable cause

upon which the warrant is based." Galpin, 720 F.3d at 446.

Here, as the DaSilva affidavit explained, the crime that was

being investigated extended over many years. A 2016 public post

from the Hill Account, which was included in a DaSilva affidavit

submitted in support of the November 2016 Warrant application,

indicates that Purcell was engaged in the charged unlawful

activity as early as 1999. In another 2016 post described in

the same affidavit, the defendant posted two pictures of a woman

on a bed with a pile of cash and the explanation, in effect,

that all he did was collect money from the women who worked for

him as prostitutes. Based upon the information provided in the

DaSilva affidavits, there was probable cause to believe that the

Hill Account was used directly and significantly in the

promotion of prostitution since its creation in 2008.

    There was also probable cause to believe that each of the

twenty-four enumerated categories of ESI requested in the

warrant would contain evidence of the specified crimes. The

Second Circuit has held that "[w]hen . . . criminal activity

pervades [an] entire business, seizure of all records of the

business is appropriate, and broad language used in warrants

will not offend the particularity requirements." U.S. Postal

Serv. V. C.E.C. Servs., 869 F.2d 184, 187 (2d Cir. 1989). The

defendant has not identified any one of the twenty-four

enumerated categories as one for which there was not sufficient

probable cause presented in the DaSilva Affidavit to find that evidence of the identified criminal activity may be found in the search.  When there is probable cause to believe that criminal activity pervades a social media account, it is appropriate for a warrant to authorize access to correspondingly broad categories of data.

## II.  The September 2017 Warrant

The defendant's challenge to the September 2017 Warrant also fails.  To the extent that he relies on the same arguments made in his challenge to the November 2016 Warrant, they are denied for the reasons already explained.  He makes one further argument unique to the September 2017 Warrant.  As the Government concedes, the September 2017 Warrant is facially deficient for its failure to identify the specific offenses at issue that would guide the search of the seized materials.  This omission runs afoul of one of the requirements of particularity, as described above.  The Government relies on the good faith exception to the exclusionary rule to avoid suppression of evidence obtained pursuant to that warrant.

When the Government invokes the good faith exception, "[t]he burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant."  Clark, 638 F.3d at 100 (citation

omitted).  The Government has met that burden.  Among other things, the September 2017 Warrant was not "so facially deficient that reliance upon it is unreasonable."  <u>Galpin</u>, 720 F.3d at 452 (citation omitted).  Because the executing officers reasonably relied on the September 2017 Warrant in conducting their search of the Hill Account, exclusion of evidence obtained pursuant to that warrant is not justified.

In addition, the search warrant application, the November 2016 Warrant, and DaSilva's affidavit make clear that the purpose of the search was to obtain evidence in a criminal investigation of prostitution and the promotion of prostitution. While it is true that

> unincorporated, unattached supporting documents [may not] cure a constitutionally defective warrant, those documents are still relevant to our determination of whether the officers acted in good faith, because they contribute to our assessment of the officers' conduct in a particular case.

<u>Rosa</u>, 626 F.3d at 64.  As in <u>Rosa</u>, it is clear that the executing officer here "was intimately familiar with the contemplated limits of the search."  <u>Id.</u> at 65.  As discussed above, the November 2016 Warrant was facially valid and preceded the warrant at issue here.  One of the officers executing both warrants, Investigator DaSilva, was the affiant for both warrants.  The warrants were sought in connection with the same, continuing investigation.  The affidavits supporting the warrant

provided ample probable cause for the search and are
unchallenged in that regard.

Investigator DaSilva has supplemented this strong record of
good faith in a declaration stating that "[i]t was [her]
understanding that . . . the Facebook Warrants only authorized
the seizure of evidence relating to the crimes of promoting
prostitution and prostitution."  Consistent with her ordinary
practice, DaSilva discussed the evidence with an Assistant
District Attorney and participated actively with the prosecutor
in the preparation of the warrants.

In short, there is nothing to suggest that the police
conduct here was "sufficiently deliberate that exclusion can
meaningfully deter it, and sufficiently culpable that such
deterrence is worth the price paid by the justice system."
Herring v. United States, 555 U.S. 135, 144 (2009).
"[E]xclusion has always been our last resort, not our first
impulse."  Rosa, 626 F.3d at 64 (citation omitted).

## III. **Territorial Reach of the Facebook Warrants**

Purcell contends that all three warrants are invalid
because they were not authorized by state or federal law.
Specifically, he argues that the Facebook Warrants exceeded the
territorial jurisdiction of the New York court that issued them
because the warrants were served on Facebook at its headquarters

in California by New York State law enforcement, and New York courts are only authorized to issue warrants to be executed within the State of New York.  Assuming that the warrants were in fact "executed" in California, rather than New York, and that New York law does not permit New York courts to issue warrants directed outside of their territorial jurisdiction, the warrants at issue here were nonetheless valid.

In federal court, the admissibility of evidence is governed by federal, not state law, "even where the evidence has been obtained by state officers who may have violated state law." United States v. Sotomayor, 592 F.2d 1219, 1223 (2d Cir. 1979) (collecting cases); see also United States v. Pforzheimer, 826 F.2d 200, 203 (2d Cir. 1987) (citation omitted).  "The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers."  Preston v. United States, 376 U.S. 364, 366 (1964).

The November 2016 and September 2017 Warrants were lawfully issued under the terms of the federal Stored Communications Act ("SCA"), which governs the disclosure of certain ESI to government entities.  18 U.S.C. § 2703.  Purcell argues that the Facebook Warrants are not valid SCA warrants because they did

not comply with "State warrant procedures", which is a requirement imposed by the SCA.

Purcell's argument relies on the provision of the statute that states that "a governmental entity" may compel the disclosure of certain categories of ESI "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." Id. at § 2703(a).[3] Purcell misreads the role of this SCA provision within the statutory scheme. His argument is contradicted by the text of the statute, read as a whole, and the statute's overall purpose.

Section 2703 authorizes warrants to be issued pursuant to the Federal Rules of Criminal Procedure or state warrant procedures by a "court of competent jurisdiction." The SCA defines "court of competent jurisdiction" as

> any district court of the United States (including a magistrate judge of such a court) or any United States Court of Appeals that has jurisdiction over the offense being investigated [or] is in or for a district in which the provider of a wire or electronic communication service is located . . . or a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants.

---

[3] This text is largely repeated in 18 U.S.C. § 2703(b)(1)(A), which applies to warrants seeking ESI stored for over 180 days.

18 U.S.C. § 2711(3).  The statute thus authorizes any federal court "that has jurisdiction over the offense being investigated" to issue an SCA warrant.  18 U.S.C. § 2711(3)(A)(i).  Accordingly, a federal court with jurisdiction over the offense may issue a warrant directed to a service provider anywhere in the territory of the United States.  Any other reading would render 18 U.S.C. §2711(3)(A)(ii) (authorizing the district court for the district where a provider is located to issue SCA warrants) entirely superfluous.  "It is one of the most basic interpretive canons that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  Hedges v. Obama, 724 F.3d 170, 189 (2d Cir. 2013).

In addition to federal courts, the SCA authorizes "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants" to issue warrants for ESI.  18 U.S.C. § 2711(3)(B).  Notably, the statute makes no distinction between the territorial reach of warrants issued by federal and state courts pursuant to its terms.  Indeed, it would make little sense for the statute to require of state courts that which it does not require of federal courts -- namely, that the ESI provider be within the ordinary territorial

jurisdiction of the court issuing the warrant.  Such a reading would defeat the entire purpose of the statute.

Additionally, the provision upon which the defendant relies to construct his argument, Section 2703(a), is not addressed to the territorial reach of the warrant issued by a court of competent jurisdiction.  Section 2703 addresses another issue. It requires regularity in the process of issuing an SCA warrant. It authorizes SCA warrants to be issued pursuant to the "procedures described in" the Federal Rules of Criminal Procedure or "using State warrant procedures".  Like New York warrant procedures, the Federal Rules of Criminal Procedure generally do not permit federal courts to issue warrants for searches or seizures outside of the judicial district in which they sit.[4]  Fed. R. Crim. P. 41(b).  Although Section 2703(a) references the "procedures" for issuing warrants contained in the Federal Rules of Criminal Procedure, the SCA does not incorporate the geographical limits imposed by the Federal Rules.  Indeed, it explicitly authorizes all federal courts throughout the nation to issue warrants for ESI so long as the court has "jurisdiction over the offense being investigated," 18

_____

[4] Rule 41(b) authorizes warrants for the seizure of a person or property "located within the district" of the issuing judicial officer.  It then adds five categories for extraterritorial reach of warrants, none of which encompasses the warrants at issue here.  Fed. R. Crim. P. 41(b)(1)-(6).

U.S.C. § 2711(3)(A)(i) and issues the warrant pursuant to the

"procedures" described in the Federal Rules.  18 U.S.C. §

2703(a).

The legislative history confirms that Congress intended the

SCA to operate as an exception to the territorial limits imposed

by Federal Rule of Criminal Procedure 41(b).  The House Report

accompanying the bill that enacted § 2703(a) states that the

provision:

> attempts to address the investigative delays caused by
> the cross-jurisdictional nature of the Internet.
> Currently, Federal Rules of Criminal Procedure 41
> requires that the 'warrant' be obtained 'within the
> district' where the property is located.  An
> investigator, for example, located in Boston who is
> investigating a suspected terrorist in that city,
> might have to seek a suspect's electronic e-mail from
> an Internet service provider (ISP) account located in
> California.  The investigator would then need to
> coordinate with agents, prosecutors and judges in the
> district in California where the ISP is located to
> obtain a warrant to search.  These time delays could
> be devastating to an investigation, especially where
> additional criminal or terrorist acts are planned.
> Section 108 amends § 2703 to authorize the court with
> jurisdiction over the investigation to issue the
> warrant directly, without requiring the intervention
> of its counterpart in the district where the ISP is
> located.

H.R. Rep. No. 107-236, 57 (2001).[5]  Again, the SCA offers no

indication that state courts are more restricted in their

_____

[5] Purcell argues that Hubbard v. MySpace, Inc., 788 F. Supp. 2d
319 (S.D.N.Y. 2011), which relied in part on this same
legislative history in reaching a similar conclusion, is
inapposite because it turned on a superseded version of §
2703(a).  Not so.  It is true that the earlier version of the

territorial reach than federal courts when issuing warrants for ESI under § 2703(a). If the territorial restrictions in the Federal Rules of Criminal Procedure do not restrict the authorizations given by Congress in the SCA, then surely neither do parallel restrictions in state court rules and procedures.

Finally, there is evidence that the state judicial officers issuing the Facebook Warrants relied on the authority granted by the SCA. The Facebook Warrants each explicitly rely on the SCA. Each of them cites 18 U.S.C. § 2705(b) as the authority for its command that Facebook not disclose the existence of the warrant until permitted to do so by court order or the completion of the investigation. The November 2016 and September 2017 Warrants were therefore authorized by the SCA, notwithstanding their reach outside of the State of New York.

---

statute required "an equivalent State warrant" rather than adherence to "State warrant procedures." That is a distinction without a difference. That amendment to the statute was meant to clear up confusion regarding the jurisdiction of federal courts to issue § 2703(a) warrants in response to requests from foreign jurisdictions, which is not at issue here. The legislative history indicates that the Department of Justice, which supported the proposed amendment, understood that it "would not in any way change the existing standards that the government must meet in order to obtain evidence . . . ." 155 Cong. Rec. S6807, S6810 (June 18, 2009).

## **BILL OF PARTICULARS**

The purpose of a bill of particulars is to "to identify
with sufficient particularity the nature of the charge pending
against [the defendant], thereby enabling [him] to prepare for
trial, to prevent surprise, and to interpose a plea of double
jeopardy should he be prosecuted a second time for the same
offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d
Cir. 1987). Where an indictment provides insufficient detail to
permit a defendant to defend against the charges against him, a
bill of particulars may be required. It is not, however, a
device for obtaining evidentiary detail. "A bill of particulars
should be required only where the charges of the indictment are
so general that they do not advise the defendant of the specific
acts of which he is accused." United States v. Torres, 901 F.2d
205, 234 (2d Cir. 1990); see also United States v. Chen, 378
F.3d 151, 163 (2d Cir. 2004). In deciding whether to order the
bill of particulars, the court considers not only the indictment
but also the discovery provided to the defendant. See Torres,
901 F.2d at 234.

The indictment here clearly states the crimes with which
Purcell has been charged. It gives reasonably approximate times
and places in which the alleged crimes occurred. The Government
has provided a substantial amount of discovery materials to

Purcell's attorneys. Although the materials provided are rather voluminous, the Government has organized the materials and highlighted the most incriminating materials as well as those it does not plan to rely upon at trial. It has engaged in multiple discussion with defense counsel regarding the discovery to assist defense counsel review of the material. Altogether, Purcell has more than enough information available to him to prepare his defense and to avoid surprise at trial. The motion for a bill of particulars appears to be little more than a request for further evidentiary detail.[6]

## CONCLUSION

Purcell's August 6, 2018 motion to suppress evidence obtained pursuant to the November 2016 and September 2017

---

[6] In his reply, Purcell requests, in the alternative, early disclosure of the Government's trial exhibits and 18 U.S.C. § 3500 material. The parties are instructed to meet and confer on this request and to request a conference with the Court if they are unable to reach agreement on a schedule for production. The Government has offered significant evidence, however, that the defendant is currently engaged in an effort to interfere with potential witnesses. Counsel should also discuss, therefore, what protections are appropriate to protect the integrity of the trial.

Warrants is denied.  His motion for a bill of particulars is also denied.


Dated:    New York, New York
          September 13, 2018

                              _____
                                        DENISE COTE
                              United States District Judge